ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS
OF THE SEVENTH JUDICIAL CIRCUIT
CIVIL ACTION NO.: 2025-CP-42-_____

Beverly L. Reese and Andy J. Reese, as
Personal Representatives of the Estate of
Lavell Najah Lane,

Plaintiffs,

vs.

**SUMMONS**

Spartanburg County Sheriff's Office; Chuck
Wright, Sheriff of Spartanburg County, in his
individual and official capacity; Chris Leso,
Major with Spartanburg County Sheriff's
Office, in his individual and official capacity;
Brandon Bell, Sergeant with Spartanburg
County Sheriff's Office, in his individual and
official capacity; Spartanburg Regional Health
Services District, Inc.; and Apella Health
Management, Inc.,

Defendants.

TO:     THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your Answer to this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

[SIGNATURE PAGE TO FOLLOW]

**PRACHT INJURY LAWYERS, LLP**

*s/Kyle L. Brady*
J. Christopher Pracht, V
S.C. Bar No. 77543
chris@864law.com
Rasheda Robinson
S.C. Bar No. 104454
RR@864law.com
Kyle L. Brady
S.C. Bar No. 105152
kyle@864law.com
1000 North Main Street
Anderson, South Carolina 29621
Telephone: (864) 226-7222
Fax: (864) 226-7224
***Attorneys for Plaintiffs***

Anderson, South Carolina
March 24, 2025

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS OF THE SEVENTH JUDICIAL CIRCUIT |
| COUNTY OF SPARTANBURG | CIVIL ACTION NO.: 2025-CP-42-_____ |
| Beverly L. Reese and Andy J. Reese, as Personal Representatives of the Estate of Lavell Najah Lane, | |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| Spartanburg County Sheriff's Office; Chuck Wright, Sheriff of Spartanburg County, in his individual and official capacity; Chris Leso, Major with Spartanburg County Sheriff's Office, in his individual and official capacity; Brandon Bell, Sergeant with Spartanburg County Sheriff's Office, in his individual and official capacity; Spartanburg Regional Health Services District, Inc.; and Apella Health Management, Inc., | |
| Defendants. | |

The Plaintiffs would show this Honorable Court the following:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiffs, Beverly L. Reese and Andy J. Reese, are the duly appointed Personal Representatives of the Estate of Lavell Najah Lane, deceased, and are residents of Cherokee County, South Carolina.

2.      Defendant Spartanburg County Sheriff's Office (hereinafter "SCSO") is a governmental entity operating under the laws of the State of South Carolina maintains, owns, oversees, and otherwise controls the Spartanburg County Detention Center. As such, Defendant SCSO was responsible for the custody and care of Mr. Lane during his incarceration at the Spartanburg County Detention Center.

ELECTRONICALLY FILED - 2025 Mar 24 4:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

3.     Defendant Chuck Wright (hereinafter "Defendant Wright") is the Spartanburg County Sheriff. At all times relevant, he was responsible for overseeing the Spartanburg County Detention Center.

4.     Defendant Chris Leso (hereinafter "Defendant Leso") is a Major with the Spartanburg County Sheriff's Office. At all times relevant, he was the Detention Service Division Commander and was responsible for overseeing the Spartanburg County Detention Center.

5.     Defendant Brandon Bell (hereinafter Defendant Bell") was a Seargent with the Spartanburg County Sheriff's Office. At all times relevant, he worked as an officer in the Spartanburg County Detention Center.

6.     Defendant Spartanburg Regional Health Services District, Inc. (hereinafter "Defendant SRHSD") is a governmental health care entity operating as a subdivision responsible for providing medical care to Mr. Lane during his multiple presentations to its emergency departments in the days leading up to his death.

7.     Defendant Apella Health Management, Inc. (hereinafter "Defendant Apella Health"), is a South Carolina nonprofit corporation registered with the South Carolina Secretary of State and transacting business in Spartanburg County, South Carolina.

8.     This Court has jurisdiction over this action pursuant to Article V, Section 11 of the South Carolina Constitution and S.C. Code Ann. § 15-7-30.

9.     Venue is proper in Spartanburg County as the acts and omissions giving rise to this cause of action occurred in Spartanburg County.

## FACTUAL BACKGROUND

10.     Lavell Najah Lane, a 29-year-old male suffering from Schizoaffective Disorder, Bipolar type, died on October 3, 2022, while in custody at the Spartanburg County Detention

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

Center.

11.     On September 27, 2022, Lavell Najah Lane was brought to Spartanburg Regional Medical Center Emergency Department (ED) by EMS after an altercation with another resident at his group home, Midway Residential Care Facility. Despite clear signs of mental instability and psychiatric distress, Mr. Lane was evaluated and discharged by Joseph Milano, M.D., and Jean Martinez, R.N., without appropriate psychiatric intervention.

12.     On September 28, 2022, EMS responded to another call involving Mr. Lane after he had become verbally threatening and combative with staff at Midway Residential Care Facility. Mr. Lane had also been punching himself in the face. During this visit, Mr. Lane threatened a patient care technician, saying, "I'm going to beat the fuck out of you" before attacking another patient. He was placed on suicide precautions, medicated for agitation, and placed under direct observation where he was noted to be pacing and beating on the walls and doors. Despite his violent behavior, psychiatric liaison nurse Jean Martinez again evaluated Mr. Lane and deemed him stable for discharge, relying on his self-reported denial of symptoms. Mr. Lane was discharged at 10:44 PM into police custody.

13.     On September 29, 2022, Mr. Lane was booked into the Spartanburg County Detention Center after his arrest for the September 28, 2022 altercation at the hospital.

14.     At around 1:03 AM, Defendant Brandon Bell heard Mr. Lane banging his head against the cell door. To prevent further injury, Mr. Lane was moved to a padded cell.

15.     While confined in a padded cell, Mr. Lane remained visibly distressed and was pepper-sprayed by Defendant Bell. Desperate to alleviate the burning effects, he attempted to rinse his face and eyes using the toilet water. In response, Defendant Bell deliberately sprayed the toilet water with additional pepper spray, ensuring that Mr. Lane had no way to relieve his suffering.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

16.     Later, as Mr. Lane attempted to shower to remove the chemical agent, Defendant Bell pepper-sprayed him again and, when Mr. Lane continued to struggle for relief, Defendant Bell deployed his Taser against him, inflicting further pain and incapacitation.

17.     Corporal Esopa documented the incident and noted that Mr. Lane had a known and severe mental health history.

18.     Later that morning, Gerald Deel, APRN, and Robert McDonald, M.D., ordered, reviewed, and/or approved injections of an anti-psychotic medication, Aristada Initio 675 mg and Aristada 1064 mg for Mr. Lane, despite the lack of any prior oral trial of Aripiprazole, contrary to FDA guidelines. Ultimately, these injections caused the onset of Neuroleptic Malignant Syndrome (NMS), a life-threatening complication of antipsychotic medications which ultimately claimed Mr. Lane's life.

19.     After injecting him with long-acting antipsychotic medications, Mr. Lane's mother was contacted by the deputies. She reported that her son had long-standing mental health issues and had been hospitalized multiple times for psychiatric care. Later that day, Mr. Lane was transported by Special Operations Response Team (hereinafter "SORT") Operator Johnson to his mental health facility.

20.     On September 30, 2022, Mr. Lane was again transported by EMS to Spartanburg Regional Mary Black Campus Emergency Department. He reported that he had been assaulted the previous night, claiming someone stepped on his foot and hit him with a shovel. However, upon examination, Dr. Emerson Alfonso Juan found no evidence of a head injury, and the only visible injury was to Mr. Lane's right great toenail, which had been dislodged. Despite his history, no mental health evaluation was conducted.

21.     In the early morning hours of October 1, 2022, EMS was called again to Midway

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

Residential Care Facility after Mr. Lane reported chest pain and expressed suicidal ideation and Mr. Lane was transported to Spartanburg Regional Medical Center.

22.    At Spartanburg Regional Medical Center, Mr. Lane was placed on suicide precautions and was uncooperative with staff.

23.    He refused to speak to the medical team and interacted with Nell Steed, M.D., while holding a pillow over his face. He admitted to visual hallucinations but denied auditory hallucinations and other symptoms. Steed documented paranoid schizophrenia as his primary diagnosis.

24.    Later in the morning of October 1, 2022, Rebekah Keyser, RN, conducted a psychiatric liaison nurse evaluation around 11:06 AM. Keyser noted Mr. Lane's history of multiple ED visits for mental health episodes. Despite his recent history of agitation, hallucinations, and suicidal ideation, Keyser determined he did not need to be admitted, because Mr. Lane reported to her that he was feeling better, was ready to take his medication, and had an upcoming psychiatric appointment already scheduled.

25.    Keyser did not confirm his claim that he had upcoming psychiatric appointments, nor did she contact Midway Residential for collateral information. Nevertheless, she cleared Mr. Lane and he was discharged around 11:13 AM.

26.    On October 2, 2022, around 10:55 PM, Mr. Lane was arrested again after being found walking in the middle of the road. Spartanburg County Sheriff's Deputy Evangelista apprehended him after he fled into a wooded area and noted that Mr. Lane was visibly agitated and acting bizarrely.

27.    Mr. Lane was booked into the Spartanburg County Detention Center, where he was placed in Holding Cell 2. Within minutes, Mr. Lane began punching the air and banging his head

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

against the cell wall.

28.    Deputies summoned SORT, who attempted to move him to a padded cell for his safety. When Mr. Lane resisted, SORT officers Cody West and Corporal Leonard Longe tased him to gain compliance.

29.    On October 2, 2022, around 11:30 PM, Allane Roach, LPN, examined Mr. Lane at the jail after the use of force incident. She documented swelling on his forehead, and despite visible signs of distress, no further medical or psychiatric evaluation was conducted.

30.    Mr. Lane was placed in a safety smock and given a safety blanket before being moved to the padded cell (Holding Cell 1). Mr. Lane was supposed to be under continuous video and audio surveillance in the padded cell due to the erratic behavior, agitation, and self-harming tendencies associated with his serious mental disability.

31.    Over the course of the next several hours, from approximately 1:10 AM to 4:45 AM on October 3, 2022, Mr. Lane's activity was recorded by the surveillance system. At 1:18 AM, Mr. Lane became still, lying prone in a frog-leg position. At 2:36 AM, Mr. Lane exhibited seizure-like activity, which continued intermittently until 2:47 AM, when he attempted to stand but was visibly unsteady.

32.    Despite his alarming physical condition and signs of distress, no medical intervention was initiated by jail staff. He remained unattended, and his movements became increasingly lethargic. Despite the requirement for continuous surveillance, jail staff failed to adequately monitor Mr. Lane's condition as it deteriorated.

33.    At 4:45 AM on October 3, 2022, Spartanburg County Detention Center staff found Mr. Lane unresponsive while serving breakfast. Attempts to revive him, including CPR and the use of an AED, were unsuccessful. EMS was called and pronounced Mr. Lane deceased at the

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

scene.

34.    The autopsy confirmed that Mr. Lane died of Neuroleptic Malignant Syndrome (NMS), a life-threatening complication of the antipsychotic medications administered by Defendant SCSO, McDonald, and Deel.

### FOR A FIRST CAUSE OF ACTION
### AGAINST DEFENDANT SCSO
**(Medical Malpractice, Negligence and Gross Negligence)**

35.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

36.    Defendant SCSO, through its employees and agents including but not limited to, McDonald, Deel, and Roach, owed a duty of care to Lavell Najah Lane to provide appropriate medical treatment, supervision, and care while he was in custody at the Spartanburg County Detention Center.

37.    At all relevant times, McDonald, Deel, and Roach, were acting within the course and scope of their employment with Defendant SCSO, making it vicariously liable for their actions and omissions under the doctrine of *respondeat superior.*

38.    Defendant SCSO, through its agents and employees, knew or should have known that Mr. Lane suffered from a severe mental health condition and that the administration of high-risk antipsychotic medications, such as Aristada Initio and Aristada, required extreme caution and careful monitoring due to the risk of Neuroleptic Malignant Syndrome (NMS).

39.    Despite this knowledge, Defendant SCSO, through its agents and employees, negligently and grossly negligently administered long-acting injectable antipsychotic medications to Mr. Lane without trialing oral Aripiprazole, in violation of FDA guidelines, which mandate oral tolerability be established before administering long-acting injections.

40.    Defendant SCSO further breached its duty of care through the following negligent

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

and grossly negligent acts and omissions:

    a. Administering Aristada Initio and Aristada to Mr. Lane without first ensuring he could tolerate oral Aripiprazole, thereby exposing him to an increased risk of developing NMS;

    b. Failing to properly monitor Mr. Lane for symptoms of NMS after administering the long-acting antipsychotic medications;

    c. Failing to recognize and respond to clear signs of NMS, including muscle rigidity, hyperthermia, altered mental status, and seizure-like activity, which developed after the administration of the medications;

    d. Failing to seek immediate medical intervention or transfer Mr. Lane to a hospital when he exhibited clear signs of medical distress and was in need of emergency care;

    e. Failing to provide adequate supervision and monitoring while Mr. Lane was in a padded cell, despite his erratic behavior and self-harm tendencies, which required continuous observation;

    f. Failing to train or supervise correctional and medical staff to properly care for mentally ill inmates, especially those receiving high-risk medications like antipsychotics; and

    g. In other ways to be shown at trial.

41. As a direct and proximate result of the negligence and gross negligence of Defendant SCSO, Mr. Lane suffered severe physical and emotional distress, resulting in his death on October 3, 2022.

42. Plaintiffs, as Personal Representatives of the Estate of Lavell Najah Lane, seek all damages recoverable under South Carolina law, including but not limited to, actual damages, pain and suffering, funeral expenses, and other compensatory damages for the wrongful death of Mr. Lane.

### FOR A SECOND CAUSE OF ACTION
### AGAINST DEFENDANT SRHSD
**(Medical Malpractice, Negligence and Gross Negligence)**

43. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

44.    Defendant SRHSD, through its employees and agents, including but not limited to, Warren Doyle, M.D.; Emerson Alfonso Juan, D.O.; and Nell Steed, M.D., owed a duty of care to Lavell Najah Lane to provide appropriate medical and psychiatric evaluation, treatment, and care during his repeated visits to Spartanburg Regional Medical Center and Spartanburg Regional Mary Black Campus.

45.    At all relevant times, Warren Doyle, M.D.; Emerson Alfonso Juan, D.O.; and Nell Steed, M.D., were acting within the course and scope of their employment with Defendant SRHSD, making it vicariously liable for their actions and omissions under the doctrine of *respondeat superior*.

46.    Defendant SRHSD, through its employees and agents, knew or should have known that Mr. Lane was suffering from a severe psychiatric condition, which required proper intervention and hospitalization, and that discharging him without appropriate care or evaluation posed a significant risk to his health and safety.

47.    Defendant SRHSD, through its employees and agents, breached its duty of care to Mr. Lane by engaging in the following negligent and grossly negligent acts and omissions:

    a.  Failing to conduct thorough psychiatric evaluations during Mr. Lane's multiple emergency department visits, despite clear evidence of psychiatric deterioration, including self-harm, violent behavior, hallucinations, and suicidal ideation;

    b.  Repeatedly discharging Mr. Lane based on his self-reports, without considering his medical history, psychiatric conditions, or collateral information from his family or group home;

    c.  Failing to admit Mr. Lane for inpatient psychiatric care, despite his repeated emergency department visits for mental health crises and clear signs of escalating psychiatric instability;

    d.  Failing to obtain or review Mr. Lane's prior psychiatric records, or gather collateral information from his family or caretakers, which would have

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

provided critical insights into his worsening condition and the need for appropriate intervention;

e.  Failing to recognize the need for hospitalization and proper psychiatric treatment, despite Mr. Lane's violent behavior, self-harm, suicidal ideation, and hallucinations, all of which are indicators of a psychiatric emergency;

f.  Relying on lower-level clinical staff, such as psychiatric liaison nurses, to make critical decisions about Mr. Lane's care, when his condition required evaluation and treatment by a psychiatrist or higher-level mental health professional;

g.  Retaining and relying upon unqualified independent contractors to evaluate and treat patients with serious psychiatric conditions, including Mr. Lane, despite their lack of expertise or required qualifications; and

h.  In other ways to be shown at trial.

48.     Defendant SRHSD, through its employees and agents, negligently and grossly negligently failed to provide the appropriate standard of care in treating Mr. Lane's psychiatric condition, which contributed to his worsening mental state and eventual death.

49.     As a direct and proximate result of the negligence and gross negligence of Defendant SRHSD, Mr. Lane was repeatedly discharged without appropriate treatment, resulting in his continued psychiatric deterioration and eventual death from Neuroleptic Malignant Syndrome (NMS) on October 3, 2022.

50.     Plaintiffs, as Personal Representatives of the Estate of Lavell Najah Lane, seek all damages recoverable under South Carolina law, including but not limited to, actual damages, pain and suffering, funeral expenses, and other compensatory damages for the wrongful death of Mr. Lane.

**FOR A THIRD CAUSE OF ACTION**
**AGAINST DEFENDANT APELLA HEALTH**
**(Medical Malpractice, Negligence, and Gross Negligence)**

51.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

52.     Defendant Apella Health was responsible for providing medical and psychiatric services at Spartanburg Regional Medical Center and Spartanburg Regional Mary Black Campus and, through its agents and employees, including Jean Martinez, R.N., and Rebekah Keyser, R.N., owed a duty of care to Lavell Najah Lane to provide appropriate medical and psychiatric evaluation, treatment, and intervention during his multiple emergency department visits in the days leading up to his death.

53.     At all relevant times, Jean Martinez, R.N., and Rebekah Keyser, R.N., were acting within the course and scope of their employment with Apella Health Management, Inc., making Apella Health vicariously liable for their actions and omissions under the doctrine of *respondeat superior*.

54.     Defendant Apella Health, through the actions of its agents and employees, knew or should have known that Mr. Lane was suffering from a severe mental health crisis, as evidenced by his:

    a.   Repeated emergency department visits for psychiatric symptoms;

    b.   History of schizophrenia, schizoaffective disorder, and bipolar disorder;

    c.   Suicidal ideation, visual hallucinations, self-harm, and violent outbursts; and

    d.   Statements and behaviors indicating ongoing psychiatric decompensation.

55.     Despite clear indicators of a psychiatric emergency, Apella Health, through its employees, negligently and recklessly failed to provide proper treatment and instead prematurely discharged Mr. Lane on multiple occasions, including:

    a.   On September 27, 2022, when Jean Martinez, R.N., evaluated Mr. Lane at Spartanburg Regional Medical Center Emergency Department following an altercation at his group home. Despite clear psychiatric instability, she allowed him to be discharged without an adequate mental health intervention;

ELECTRONICALLY FILED - 2025 Mar 24 4:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

    b.   On September 28, 2022, when Mr. Lane threatened hospital staff, engaged in self-harm, and attacked another patient, Martinez again failed to recognize the severity of his mental illness and prematurely discharged him into police custody rather than ensuring proper psychiatric hospitalization;

    c.   On October 1, 2022, when Rebekah Keyser, R.N., evaluated Mr. Lane at Spartanburg Regional Medical Center after he expressed suicidal ideation, hallucinations, and paranoia. Instead of ensuring inpatient treatment, she relied solely on his self-reported statement that he was "feeling better" and failed to verify whether he had an actual psychiatric treatment plan or follow-up care; and

    d.   other instances to be proven at trial.

56.     Apella Health, through the actions of Martinez and Keyser, breached its duty of care to Mr. Lane through the following acts of medical malpractice, negligence, and gross negligence:

    a.   Failing to conduct proper psychiatric evaluations despite clear symptoms of a mental health crisis;

    b.   Prematurely discharging Mr. Lane based on his self-reports without gathering collateral information from his family, group home, or prior treatment providers;

    c.   Failing to admit Mr. Lane for inpatient psychiatric care, despite his escalating symptoms and repeated visits to the emergency department;

    d.   Negligently relying on psychiatric liaison nurses to make critical medical decisions instead of involving a psychiatrist or mental health specialist;

    e.   Failing to recognize that Mr. Lane's condition required involuntary commitment or emergency psychiatric hospitalization rather than repeated discharges; and

    f.   Other acts of negligence and gross negligence to be shown at trial.

57.     As a direct and proximate result of Apella Health's medical malpractice, negligence, and gross negligence, Mr. Lane was denied appropriate psychiatric treatment, leading to:

    a.   Continued psychiatric deterioration;

    b.   Unnecessary suffering and worsening of his mental condition;

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

    c.   Repeated encounters with law enforcement that escalated his distress; and

    d.   His ultimate death from Neuroleptic Malignant Syndrome (NMS) after being subjected to improper medical treatment while in custody.

58.    Plaintiffs, as Personal Representatives of the Estate of Lavell Najah Lane, seek all available damages under South Carolina law, including but not limited to:

    a.   Compensatory damages for Mr. Lane's pain and suffering;

    b.   Medical and funeral expenses;

    c.   Punitive damages against Apella Health for its reckless disregard for Mr. Lane's well-being;

    d.   Attorneys' fees and costs as permitted by law; and

    e.   Any further relief the Court deems just and proper.

### FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT SCSO
**(Negligence, Gross Negligence, and Recklessness, S.C. Code Ann. § 15-78-10 et. seq.)**

59.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

60.    Defendant Spartanburg County Sheriff's Office ("SCSO") owed a duty of care to detainees, including Lavell Najah Lane, to ensure their safety and proper supervision while in custody at the Spartanburg County Detention Center.

61.    At all relevant times, SCSO knew or should have known that Mr. Lane suffered from severe mental illness and was at high risk for self-harm and medical distress, particularly after:

    a.   His erratic and self-harming behavior upon booking, including punching the air, banging his head, and engaging in bizarre movements;

    b.   His placement in a padded cell, which indicated a heightened need for continuous monitoring;

    c.   The use of force incidents, including being pepper-sprayed, tased, and physically restrained, all of which increased his risk of medical complications; and

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

    d.   His known history of psychiatric hospitalizations, prior emergency medical visits, and documented deterioration while in custody.

62.    Despite these clear warning signs, Defendant SCSO's officers negligently and recklessly failed to properly monitor, supervise, and intervene to prevent Mr. Lane's death, including but not limited to:

    a.   Failing to provide continuous monitoring of Mr. Lane while he was housed in a padded cell, despite policies requiring video and audio surveillance for detainees with known psychiatric conditions and a risk of self-harm;

    b.   Failing to conduct timely welfare checks on Mr. Lane, allowing his condition to deteriorate unnoticed over several hours;

    c.   Failing to intervene when surveillance footage showed Mr. Lane experiencing distress, including seizure-like activity, severe lethargy, and signs of medical distress consistent with Neuroleptic Malignant Syndrome (NMS);

    d.   Failing to train and supervise detention officers to recognize and respond to signs of mental health crises and medical emergencies among detainees;

    e.   Failing to follow established policies for high-risk detainees, including the requirement to visually observe detainees at regular intervals and promptly seek medical intervention for individuals in distress; and

    f.   Other acts of negligence and gross negligence to be shown at trial.

63.    As a direct and proximate result of Defendant SCSO's negligence and gross negligence, Mr. Lane was left unattended for hours as he suffered a clear medical crisis, leading to his ultimate suffering and death on October 3, 2022.

64.    Plaintiffs, as Personal Representatives of the Estate of Lavell Najah Lane, seek all damages recoverable under South Carolina law.

**FOR A FIFTH CAUSE OF ACTION**
**AGAINST DEFENDANTS SCSO AND SGT. BRANDON BELL**
**(Negligence, Gross Negligence, Recklessness, and Intentional Conduct**
**S.C. Code Ann. § 15-78-10 et. seq.)**

65.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

66.     Defendant SCSO and Defendant Bell, individually and in his official capacity, owed a duty of care to detainees, including Lavell Najah Lane, to ensure their safety and protect them from unnecessary harm while in custody.

67.     Defendant Bell knew or should have known that Mr. Lane suffered from severe mental illness and was actively experiencing psychiatric distress when placed in the padded cell at the Spartanburg County Detention Center on September 29, 2022.

68.     Despite Mr. Lane exhibiting clear signs of mental health crisis, Defendant Bell used excessive and unnecessary force, including:

   a. Deploying pepper spray directly into Mr. Lane's face while he was inside a padded cell, despite there being no immediate threat to staff or other detainees;

   b. Spraying the toilet water with pepper spray to prevent Mr. Lane from rinsing the chemical agent from his eyes and face, inflicting prolonged pain and suffering;

   c. Pepper-spraying Mr. Lane a third time while he attempted to shower off the chemical agent, further exacerbating his distress; and

   d. Deploying a Taser against Mr. Lane, despite the use of chemical force already impairing his ability to comply with orders.

69.     Defendant Bell's actions were excessive, reckless, and intentional, causing unnecessary physical and emotional suffering to Mr. Lane.

70.     Defendant Spartanburg County Sheriff's Office was grossly negligent through Defendant Bell's actions and in failing to properly train and supervise Defendant Bell and other detention officers regarding:

   a. The appropriate use of force against detainees experiencing mental health crises;

   b. Proper de-escalation techniques to prevent unnecessary force; and

   c. Ensuring detainees subjected to chemical agents receive timely medical treatment and decontamination rather than being prevented from rinsing off pepper spray.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

71.     As a direct and proximate result of the grossly negligent, reckless, and intentional conduct of Defendants SCSO and Defendant Bell, Mr. Lane suffered significant physical pain, emotional distress, and psychological trauma.

72.     Plaintiffs, as Personal Representatives of the Estate of Lavell Najah Lane, seek all damages recoverable under South Carolina law, including but not limited to, actual damages, pain and suffering, and other damages arising out of this incident.

## FOR A SIXTH CAUSE OF ACTION
## AGAINST SCSO
**(42 U.S.C. § 1983: Violations of the Fourteenth & Eighth Amendments)**

73.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

74.     Defendant Spartanburg County Sheriff's Office ("SCSO") is a "person" subject to suit under 42 U.S.C. § 1983 and, at all relevant times, acted under color of state law.

### Fourteenth Amendment Violations

75.     Mr. Lane suffered from Schizoaffective Disorder, Bipolar type, and exhibited severe psychiatric distress including self-harm, aggression, hallucinations, and repeated hospital admissions. These conditions, along with the long-acting antipsychotic medications (Aristada Initio 675 mg and Aristada 1064 mg) administered by SCSO without proper oversight, posed a serious risk of harm in the form of Neuroleptic Malignant Syndrome (NMS) and acute psychiatric decompensation.

76.     Rather than providing appropriate evaluation, monitoring, or medical/psychiatric care, SCSO personnel intentionally, knowingly, and recklessly failed to address the risk that the condition posed in the following list of particulars, among others:

   a.   Used excessive force, such as pepper spraying Mr. Lane in a padded cell, spraying additional pepper spray into the toilet to prevent him from rinsing off the irritant, pepper spraying him again in the shower, and ultimately tasing him while he remained visibly distressed;

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

b.   Administered and/or approved high-risk antipsychotic medications (Aristada Initio 675 mg and Aristada 1064 mg) without adequate medical oversight, which precipitated the onset of NMS; and

c.   Failed to evaluate or monitor Mr. Lane during subsequent detentions despite escalating symptoms of agitation, erratic behavior, and potential NMS. SCSO effectively ignored his urgent need for immediate medical intervention.

77.   These actions and omissions were not isolated but reflected SCSO's policies, customs, and practices, including:

a.   Inadequate training in de-escalation techniques for detainees with mental health crises, resulting in punitive uses of force (pepper spray, Tasers) instead of medical care;

b.   Non-enforcement of monitoring protocols for high-risk detainees in padded cells, allowing Mr. Lane to remain unattended for hours despite visible seizure-like activity; and

c.   Failure to implement medication safety procedures, leaving Mr. Lane with no meaningful follow-up after receiving long-acting antipsychotics known to cause NMS.

78.   From September 29, 2022, when Mr. Lane was booked and documented as having a history of serious mental illness, through October 3, 2022, when he died, SCSO staff knew or should have known that Mr. Lane suffered from severe mental illnesses and that SCSO's actions or inactions pled herein posed an unjustifiably high risk of harm.

79.   The repeated uses of force and failure to monitor or treat Mr. Lane's escalating symptoms were objectively unreasonable under the Fourteenth Amendment. They were disproportionate to any legitimate nonpunitive goal, ultimately contributing to Mr. Lane's serious injury and preventable death from NMS on October 3, 2022.

80.   By ignoring his obvious psychiatric and medical needs, SCSO staff directly caused Mr. Lane to endure severe physical and mental suffering, culminating in his untimely death.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

## Eighth Amendment Violations

81.    "[A] pretrial detainee makes out a violation at least where he shows deliberate indifference to serious medical needs under cases interpreting the Eighth Amendment." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021).

82.    Even if Mr. Lane were considered a convicted inmate, he had a serious medical need, evidenced by:

    a.  His acute psychiatric condition requiring specialized intervention;

    b.  The administration of long-acting antipsychotics carrying a known risk of NMS; and

    c.  Clear signs of physical collapse, including seizure-like symptoms in the final hours of his life while being confined by SCSO and while under their care.

83.    SCSO personnel had actual or constructive knowledge that Mr. Lane was at substantial risk of serious harm. Rather than providing timely emergency care or mental health intervention, they:

    a.  Repeatedly used force in ways unrelated to any legitimate penological need;

    b.  Disregarded obvious symptoms of NMS and acute distress (such as rigidity, confusion, seizures, etc.), failing to call medical providers; and

    c.  Left him unattended in a padded cell while his condition deteriorated, ultimately resulting in death.

84.    SCSO's actions and inactions constituted deliberate indifference to Mr. Lane's constitutionally protected serious medical needs and safety.

85.    As a direct and proximate result of SCSO's unconstitutional policies, customs, and acts/omissions, Mr. Lane endured unnecessary pain, mental anguish, and avoidable deterioration and was wrongfully deprived of his life through preventable complications from NMS.

86.     Plaintiffs, as Personal Representatives of his Estate, have suffered pecuniary loss (including funeral expenses) and seek compensatory damages, punitive damages where appropriate, attorneys' fees, and all other relief this Court deems just and proper under 42 U.S.C. §§ 1983 and 1988.

### FOR A SEVENTH CAUSE OF ACTION
### AGAINST DEFENDANT WRIGHT AND DEFENDANT LESO
### IN THEIR INDIVIDUAL CAPACITIES
**(42 U.S.C. § 1983: Violations of the Fourteenth and Eighth Amendments)**

87.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

88.     At all relevant times, Defendant Chuck Wright, as Sheriff of Spartanburg County, and Defendant Chris Leso, as Major and Detention Service Division Commander, were responsible for the supervision, training, and oversight of SCSO personnel operating the Spartanburg County Detention Center.

89.     Defendants Wright and Leso knew or should have known that SCSO staff engaged in unconstitutional practices, including:

   a. The excessive and punitive use of force against detainees in psychiatric distress, as evidenced by the use of pepper spray, Tasers, and chemical exposure tactics against Mr. Lane on September 29, 2022;

   b. The administration of high-risk antipsychotic medications without proper oversight, leading to foreseeable and preventable complications of Neuroleptic Malignant Syndrome (NMS);

   c. The systemic failure to monitor detainees with serious mental health conditions, which allowed Mr. Lane to remain unattended despite visible signs of medical deterioration between October 2 and October 3, 2022; and

   d. The routine failure to provide necessary medical intervention, even when detainees exhibited clear symptoms of life-threatening conditions.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

### Fourteenth Amendment Violations

90.    Defendants Wright and Leso violated the Fourteenth Amendment by maintaining or allowing policies, customs, or practices that were not rationally related to a legitimate governmental interest and were excessive in relation to any legitimate purpose. These unconstitutional customs included:

    a.  Failing to train detention officers on de-escalation techniques for mentally ill detainees, which resulted in the excessive use of force against Mr. Lane on September 29, 2022;

    b.  Failing to enforce policies requiring proper observation of high-risk detainees, allowing Mr. Lane to remain unmonitored despite displaying seizure-like activity and lethargy in his final hours; and

    c.  Allowing or tacitly approving the use of long-acting psychiatric medications without adequate follow-up, despite the known risks of NMS;

91.    Defendants Wright and Leso were deliberately indifferent to the fact that their policies (or lack thereof) posed an unjustifiably high risk of serious harm to detainees with severe mental health needs.

92.    Despite knowing of prior incidents involving force against mentally ill detainees and the foreseeable dangers of failing to monitor inmates receiving antipsychotic medication, they failed to correct these systemic failures.

### Eighth Amendment Violations

93.    "[A] pretrial detainee makes out a violation at least where he shows deliberate indifference to serious medical needs under cases interpreting the Eighth Amendment." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021).

94.    Defendants Wright and Leso's deliberate indifference violated the Eighth Amendment by failing to ensure:

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

   a. That jail staff received adequate training in recognizing and responding to symptoms of psychiatric crises and life-threatening medical conditions;

   b. That officers and medical personnel monitored detainees receiving high-risk medications, especially those with prior psychiatric hospitalizations; and

   c. That detainees exhibiting visible medical distress, including seizures, lethargy, and confusion, were promptly provided emergency medical intervention rather than left unattended in a padded cell.

95.   Defendants Wright and Leso had actual and/or constructive knowledge that the inadequate policies and customs at the Spartanburg County Detention Center created a substantial risk of serious harm for mentally ill detainees like Mr. Lane. Despite this knowledge, they failed to take reasonable steps to remedy the deficiencies, directly contributing to Mr. Lane's preventable deterioration and death.

96.   As a direct and proximate result of Defendants Wright and Leso's deliberate indifference and failure to properly train and supervise detention staff, Mr. Lane:

   a. Was subjected to excessive and punitive force when pepper-sprayed, tased, and chemically restrained without justification;

   b. Did not receive proper medical supervision after being injected with high-risk medications, leading to the onset of Neuroleptic Malignant Syndrome;

   c. Was left unmonitored despite seizure-like activity, resulting in his deterioration and death; and

   d. Suffered unnecessary pain, distress, and preventable death, depriving him of his constitutional rights.

97.   Plaintiffs, as Personal Representatives of the Estate of Mr. Lane, seek:

   a. Compensatory damages for Mr. Lane's pain, suffering, and wrongful death;

   b. Punitive damages against Defendants Wright and Leso for their reckless disregard of Mr. Lane's rights;

   c. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

   d. Any other relief this Court deems just and proper.

ELECTRONICALLY FILED - 2025 Mar 24 3:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

**FOR AN EIGHTH CAUSE OF ACTION**
**AGAINST DEFENDANT BELL, IN HIS INDIVIDUAL CAPACITY**
**(42 U.S.C. § 1983: Violations of the Fourteenth Amendment)**

98.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

99.     At all relevant times, Defendant Brandon Bell was acting under color of state law as a Sergeant with the Spartanburg County Sheriff's Office and was assigned to the Spartanburg County Detention Center on September 29, 2022.

100.    On September 29, 2022, Defendant Bell encountered Mr. Lane, a pretrial detainee in psychiatric distress, and engaged in a series of excessive and punitive uses of force that were objectively unreasonable under the Fourteenth Amendment. Specifically, despite knowing or having reason to know that Mr. Lane had a severe mental illness and was exhibiting self-harm and agitation, Defendant Bell:

   a.  Pepper-sprayed Mr. Lane while he was confined in a padded cell, despite the absence of any immediate threat;

   b.  Sprayed additional pepper spray into the toilet water to prevent Mr. Lane from alleviating the effects of the chemical agent, thereby intentionally prolonging his suffering;

   c.  Pepper-sprayed Mr. Lane again while he attempted to shower, interfering with his ability to decontaminate from the prior exposure; and

   d.  Tased Mr. Lane, using an electroshock weapon against a mentally ill detainee already in distress, further escalating the level of force instead of de-escalating the situation.

101.    Defendant Bell's use of force was not rationally related to any legitimate, nonpunitive governmental purpose and was excessive in relation to any conceivable justification.

102.    Defendant Bell knew or should have known that his actions were unnecessary and posed an unjustifiably high risk of harm to Mr. Lane, particularly given:

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

    a.   Mr. Lane's known history of psychiatric hospitalizations, which was documented in SCSO reports;

    b.   Mr. Lane's observable psychiatric distress, including self-harm and agitation;

    c.   The lack of any active threat or security risk that could justify escalating force to the level used; and

    d.   The deliberate infliction of additional harm by spraying the toilet water to ensure continued exposure to the chemical irritant.

103.    As a direct and proximate result of Defendant Bell's unconstitutional conduct, Mr. Lane suffered severe physical pain, psychological distress, and prolonged chemical exposure, which contributed to his deteriorating psychological condition and ultimate death on October 3, 2022.

104.    Plaintiffs, as Personal Representatives of the Estate of Mr. Lane, seek:

    a.   Compensatory damages for Mr. Lane's pain and suffering resulting from Defendant Bell's unconstitutional use of force;

    b.   Punitive damages against Defendant Bell for his reckless disregard of Mr. Lane's rights;

    c.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    d.   Any other relief this Court deems just and proper.

### FOR A NINTH CAUSE OF ACTION
### AGAINST DEFENDANT SRHSD
**(42 U.S.C. § 1983: Violations of the Fourteenth Amendment)**

105.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

106.    Defendant Spartanburg Regional Health Services District, Inc. ("SRHSD") is a governmental health care entity responsible for providing emergency medical and psychiatric care to individuals brought to Spartanburg Regional Medical Center and Spartanburg Regional Mary Black Campus.

107.    SRHSD is a "person" subject to suit under 42 U.S.C. § 1983, and its medical personnel acted under color of state law and were responsible for ensuring that individuals in their care, including Mr. Lane, received constitutionally adequate medical treatment.

108.    Mr. Lane presented to SRHSD's emergency departments multiple times between September 27, 2022, and October 1, 2022, exhibiting clear and escalating signs of acute psychiatric distress, yet was discharged each time without appropriate intervention or medical oversight.

109.    SRHSD and its medical personnel knew or should have known that Mr. Lane required emergency psychiatric hospitalization and careful medical monitoring yet failed to provide either.

110.    SRHSD's acts and omissions, which deprived Mr. Lane of necessary medical care and directly contributed to his preventable death, include, but are not limited to:

   a.  On September 27, 2022, SRHSD personnel failed to conduct a meaningful psychiatric evaluation before discharging Mr. Lane, despite his acute psychosis and documented history of severe mental illness;

   b.  On September 28, 2022, SRHSD personnel again prematurely discharged Mr. Lane, even though he was placed on suicide precautions, was medicated for agitation, and had physically attacked a patient before being taken into custody. The decision to release him back to law enforcement instead of securing psychiatric inpatient admission placed him at substantial risk of harm;

   c.  On September 30, 2022, after Mr. Lane reported being assaulted at the jail, SRHSD medical staff conducted only a cursory physical examination and failed to perform any psychiatric evaluation, despite his well-documented mental health history and recent outbursts;

   d.  On October 1, 2022, when Mr. Lane was again taken to SRHSD due to chest pain and suicidal ideation, he was placed on suicide precautions but was ultimately discharged within hours, even though his condition was escalating, not stabilizing;

   e.  Failing to ensure continuity of care by failing to coordinate with Midway Residential Care Facility, law enforcement, or psychiatric services regarding Mr. Lane's ongoing medical and psychiatric deterioration; and

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

ELECTRONICALLY FILED - 2025 Mar 24 4:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

f.   Failing to properly assess or warn detention officials about the risks of Neuroleptic Malignant Syndrome (NMS) after administering high-risk long-acting antipsychotic injections (Aristada Initio 675 mg and Aristada 1064 mg) without first trialing oral Aripiprazole, as required by FDA guidelines.

111.   SRHSD's personnel knew or should have known that discharging Mr. Lane without hospitalization or medical monitoring posed an unjustifiably high risk of harm.

112.   Given his documented history of psychiatric crises, prior hospitalizations, and escalating symptoms, any reasonable medical provider would have recognized that his condition required emergency psychiatric admission and close observation.

113.   SRHSD's unconstitutional policies, customs, or practices caused the violation of Mr. Lane's Fourteenth Amendment rights. These include, but are not limited to:

a.   A failure to implement or enforce policies ensuring proper psychiatric evaluations for individuals presenting with acute psychosis and suicidal ideation, leading to Mr. Lane's improper discharge without crisis intervention;

b.   A failure to properly assess and monitor patients receiving long-acting antipsychotic medications, despite known risks of NMS and other life-threatening complications;

c.   A systemic practice of allowing unqualified or insufficiently trained personnel to conduct psychiatric evaluations, resulting in misdiagnoses, premature discharges, and inadequate treatment plans for individuals in psychiatric crisis, including Mr. Lane;

d.   A systemic practice of not reviewing prior medical records to understand and guide treatment of patients, including Mr. Lane;

e.   A failure to train or supervise emergency medical personnel in recognizing the symptoms of severe psychiatric decompensation and ensuring appropriate inpatient admissions; and

f.   Other systemic failures in medical oversight and treatment that demonstrate deliberate indifference to the serious medical needs of patients like Mr. Lane.

114.   As a direct and proximate result of SRHSD's deliberate indifference:

a. Mr. Lane was denied necessary emergency psychiatric hospitalization, despite presenting with multiple episodes of suicidal ideation, self-harm, aggression, and psychotic behavior;

b. He was improperly discharged back into law enforcement custody, where he was subsequently subjected to excessive force, the inappropriate use of chemical agents, and medical neglect; and

c. He suffered the life-threatening onset of NMS, which could have been prevented or treated had he received appropriate psychiatric care and monitoring at SRHSD.

115.    Plaintiffs, as Personal Representatives of the Estate of Mr. Lane, have suffered pecuniary loss, including funeral expenses, and seek compensatory damages, punitive damages (where appropriate), attorneys' fees, and all other relief this Court deems just and proper under 42 U.S.C. §§ 1983 and 1988.

### FOR A TENTH CAUSE OF ACTION
### AGAINST DEFENDANT SCSO
**(Violation of Title II of the Americans with Disabilities Act
and Section 504 of the Rehabilitation Act)**

116.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

117.    Title II of the Americans with Disabilities Act ("ADA") prohibits public entities from discriminating against qualified individuals with disabilities. Specifically, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132).

118.    Section 504 of the Rehabilitation Act of 1973 similarly prohibits disability discrimination by entities receiving federal financial assistance, stating that "no otherwise qualified individual with a disability in the United States shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

discrimination under any program or activity receiving Federal financial assistance." (29 U.S.C. § 794(a)).

119.    Defendant Spartanburg County Sheriff's Office ("SCSO") is a public entity subject to Title II of the ADA and receives federal financial assistance, making it subject to Section 504 of the Rehabilitation Act.

120.    Mr. Lane was a qualified individual with a disability under both statutes. He was diagnosed with Schizoaffective Disorder, Bipolar type, a serious psychiatric condition that substantially limited his ability to communicate, regulate his behavior, and care for himself. His disability required reasonable modifications and accommodations while he was in the custody of SCSO.

121.    SCSO had an affirmative duty under the ADA and Rehabilitation Act to ensure that Mr. Lane was provided reasonable accommodations and modifications necessary to access safe and humane detention services on an equal basis with non-disabled detainees.

122.    SCSO failed to provide Mr. Lane with necessary accommodations and services, resulting in harm.

123.    Specifically, despite knowing that Mr. Lane's psychiatric condition required specialized medical care, behavioral interventions, and protection from excessive force and medical neglect, SCSO failed to:

   a.  Develop and implement an individualized plan to accommodate Mr. Lane's psychiatric disability while in custody, despite knowing he required specific interventions to ensure his safety and well-being;

   b.  Train detention officers and medical personnel on how to properly interact with and supervise individuals with psychiatric disabilities, leading to the repeated use of force and punitive measures instead of medical intervention;

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

c. Ensure that Mr. Lane was housed in an appropriate setting where he could receive mental health services and supervision, rather than leaving him in a general holding cell where he was at increased risk of harm;

d. Monitor or supervise Mr. Lane's deteriorating medical condition, even after he displayed self-harm, erratic behavior, and signs of Neuroleptic Malignant Syndrome (NMS), despite the clear need for heightened medical attention; and

e. Provide reasonable modifications to standard detention practices to ensure Mr. Lane's disability-related needs were met, instead of subjecting him to excessive force (multiple deployments of pepper spray and a Taser) and failing to obtain timely medical intervention.

124. Further, SCSO knew or should have known that individuals with psychiatric disabilities require reasonable accommodations in detention settings to prevent foreseeable harm. Instead, SCSO engaged in a systemic failure to accommodate mentally ill detainees by failing to:

a. Develop policies and procedures for handling detainees with psychiatric disabilities in a non-discriminatory manner;

b. Train staff in appropriate crisis intervention techniques to avoid the unnecessary use of force against individuals with psychiatric disabilities;

c. Ensure proper medical monitoring and intervention for detainees experiencing acute psychiatric episodes; and

d. Prevent the discriminatory denial of necessary medical care by failing to provide appropriate psychiatric treatment and monitoring for individuals with known psychiatric conditions.

125. SCSO's failure to provide reasonable accommodations and necessary medical care resulted in Mr. Lane being denied access to safe and humane detention services on an equal basis with non-disabled detainees. Instead of receiving appropriate mental health care and supervision, Mr. Lane was subjected to excessive force, improper medical treatment, and prolonged suffering that directly contributed to his death.

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

126.     SCSO was deliberately indifferent to the known risk that Mr. Lane would suffer harm as a result of its failures in supervision, training, and policies. SCSO knew that detainees with psychiatric disabilities, like Mr. Lane:

   a. Require specific behavioral interventions rather than force-based tactics, yet failed to implement any meaningful accommodations;

   b. Are at heightened risk of medical emergencies when administered high-risk antipsychotic medications, yet failed to ensure Mr. Lane was properly monitored after receiving Aristada Initio and Aristada injections;

   c. Are more likely to suffer abuse or excessive force, yet failed to train officers in how to safely de-escalate situations involving detainees with psychiatric disabilities; and

   d. May be unable to advocate for their own medical needs, yet failed to provide heightened medical supervision despite knowing Mr. Lane was experiencing psychiatric decompensation and serious physical distress.

127.     SCSO's deliberate indifference amounted to intentional discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act, as it knew that a federally protected right was substantially likely to be violated and failed to act despite that knowledge.

128.     As a direct and proximate result of SCSO's violations of Title II of the ADA and Section 504 of the Rehabilitation Act, Mr. Lane suffered:

   a. Severe physical pain and injury due to excessive force and the failure to provide necessary psychiatric accommodations;

   b. Profound emotional and psychological harm, including terror, distress, and worsening psychiatric symptoms resulting from discriminatory treatment;

   c. Denial of equal access to humane and medically appropriate detention conditions, as his disability-related needs were ignored, leading to his preventable death; and

   d. Loss of dignity, autonomy, and life, as SCSO's failure to provide reasonable modifications and adequate medical care resulted in his suffering and untimely death.

ELECTRONICALLY FILED - 2025 Mar 24 3:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

129.    Plaintiffs seek compensatory damages, attorneys' fees, and costs under Title II of the ADA (42 U.S.C. § 12133; 42 U.S.C. § 1981a) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794a), as well as any other relief this Court deems just and proper.

## SURVIVAL ACTION
### S.C. Code Ann. § 15-51-10

130.    Plaintiffs incorporate all paragraphs above as if fully stated herein.

131.    Mr. Lane, during the course of this incident, suffered injury and damages caused by the actionable conduct of these Defendants, which include, but are not limited to:

      a.  Pain and suffering;

      b.  Shock and terror;

      c.  Mental and emotional distress;

      d.  Medical bills;

      e.  Severe injury to the whole person;

      f.  And other damages to be proven at trial.

132.    Mr. Lane's causes of action for his injuries and damages survive his death and pass to his Estate.

## WRONGFUL DEATH ACTION
### S.C. Code Ann. § 15-51-20

133.    Plaintiffs incorporate all paragraphs above as if fully stated herein.

134.    As a direct result of the actionable conduct of these Defendants, Mr. Lane met his untimely death.

135.    Plaintiffs and the statutory beneficiaries of the Estate have experienced great mental anguish, suffering, grief, sorrow, bereavement, and loss of society, advice, companionship,

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305

comfort, protection, pecuniary benefit, and other damages recoverable under the South Carolina Wrongful Death Act.

136.     Plaintiffs are informed and believe, pursuant to the South Carolina Wrongful Death Act, the Estate is entitled to judgment against these Defendants for an award of actual and punitive damages in an amount to be determined by the trier of fact and for any additional relief the court deems just and proper.

### RELIEF REQUESTED

137.     As a direct and proximate result of the Defendants' conduct as outlined herein, Mr. Lane suffered conscious pain and suffering, shock and terror, mental and emotional distress, and other damages. Those injuries survive his death and pass to his Estate.

138.     As a direct and proximate result of the Defendants' conduct as outlined herein, Mr. Lane's statutory beneficiaries have suffered pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the use and comfort of the decedent's society. Additionally, Plaintiffs have incurred funeral and estate administration expenses as a result of the Defendants' conduct.

139.     The conduct of Defendants alleged herein combined and concurred to bring about the injuries and damages complained of by Plaintiffs and suffered by Mr. Lane. As such, Defendants are jointly and severally liable to Plaintiffs for actual and punitive damages. Plaintiffs are entitled, both in their individual capacities and as Personal Representatives of the Estate, to judgment against Defendants for actual and punitive damages in an amount to be determined by a jury.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

a.  For actual damages according to proof;

b.  For compensatory damages as permitted by law;

c.  For statutory damages as permitted by law;

d.  For punitive damages as determined by the trier of fact;

e.  For all costs of Court;

f.  For attorneys' fees;

g.  For a trial by jury; and

h.  For such other relief as the trier of fact deems just and proper.

Respectfully submitted,

PRACHT INJURY LAWYERS, LLP

*s/Kyle L. Brady*
J. Christopher Pracht, V
S.C. Bar No. 77543
chris@864law.com
Rasheda Robinson
S.C. Bar No. 104454
RR@864law.com
Kyle L. Brady
S.C. Bar No. 105152
kyle@864law.com
1000 North Main Street
Anderson, South Carolina 29621
Telephone: (864) 226-7222
Fax: (864) 226-7224
***Attorneys for Plaintiffs***

Anderson, South Carolina
March 24, 2025

ELECTRONICALLY FILED - 2025 Mar 24 5:55 PM - SPARTANBURG - COMMON PLEAS - CASE#2025CP4201305